[Civ. No. 42738. First Dist., Div. Two. Aug. 24, 1978.]

*PACIFIC PLAN OF CALIFORNIA, Plaintiff and Appellant, v.
DAVID H. FOX, as Real Estate Commissioner, etc.,
Defendant and Respondent.

*Reporter's Note: This case was previously entitled "Pacific Plan v. Kinder."

216

## COUNSEL

Thoits, Lehman & Love and J. Ronald Hershberger for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Tyler B. Pon, Deputy Attorney General, for Defendant and Respondent.

## Opinion

**TAYLOR, P. J.**—Pacific Plan of California (Pacific Plan) appeals from a judgment denying its petition for a writ of mandamus to set aside an order of the State Real Estate Commissioner directing Pacific Plan to refrain from charging or collecting escrow fees without taking into account the costs and expenses paid, incurred or reasonably earned for each individual loan transaction. Pacific Plan argues that: 1) the court erred in concluding that Business and Professions Code section 10242, subdivision (a), requires individualized cost accounting for each escrow operation; and 2) the trial court erred in finding that the commissioner had established that fees earned by Pacific Plan were not reasonably earned. For the reasons set forth below, we have concluded that the court below properly determined that Pacific Plan's method of calculating escrow fees violated the statute.

The facts[1] are not in dispute. Pacific Plan is a licensed mortgage loan broker, subject to the provisions of Business and Professions Code section 10131. Pacific Plan's activities as a mortgage loan broker are regulated and controlled by Business and Professions Code section 10240 et seq.[2] In the course of its mortgage loan business, Pacific Plan solicits borrowers and lenders for loans secured directly or collaterally by liens on real property and negotiates and arranges the making and collection of these loans. Pacific Plan routinely performs "escrow services," for which the borrower is charged an "escrow fee" pursuant to section 10242. At the relevant time here, this statute provided, so far as pertinent: "The maximum amount of expenses, charges and interest to be paid *by a borrower with respect to any loan* subject to the provisions of this article shall be as follows: (a) The maximum amount of all costs and expenses referred to in subdivision (a) of Section 10241 shall not exceed four percent (4%) of the principal amount of the loan or one hundred sixty-five dollars ($165), whichever is greater but in no event to exceed two hundred ninety-five ($295), *provided that in no event shall said maximum amount exceed actual costs and expenses paid, incurred or reasonably earned.*"[3] (Italics added.)

---

[1]The facts are based on the transcript of the administrative proceedings and the findings and the decisions of the administrative judge, which were before the trial court.

[2]Unless otherwise specified, all references will be to the Business and Professions Code.

[3]By Statutes of 1976, chapter 927, section 4, effective January 1, 1977, the statute was amended to permit fees of *5 percent* of the principal amount of the loan or *$195*, but in no event to exceed *$325*.

Pacific Plan calculates its escrow fees by first determining the maximum amount permitted by the above statute for each loan. From this maximum, Pacific Plan then deducts the fixed expenses, such as the appraisal fee, title insurance fee, recording fee, reconveyance fee, and credit investigation fee.[4] The remaining balance is then charged as the escrow fee.

Thus, Pacific Plan admittedly charges the maximum statutory amount in every instance but makes no effort to ascertain the "actual costs and expenses paid, incurred or reasonably earned" for each transaction.

The trial court found that as a result of Pacific Plan's failure to employ a method of calculating escrow fees on the actual costs and expenses paid, incurred or reasonably earned, an unidentified number of borrowers were charged escrow fees in excess of the actual costs and expenses paid, incurred or reasonably earned for that particular transaction. The court concluded that Pacific Plan had violated the statute.

Pacific Plan argues that the above construction of the statute is erroneous and that it should be allowed to total its costs and expenses and average these out over all of the loans for which it served as a broker. Pacific Plan's construction ignores the express language of the statute which pertains to *"The maximum . . . to be paid by a borrower with respect to any loan,"* and states that *"in no event shall said maximum amount exceed actual costs and expenses paid, incurred or reasonably earned."* The statute was clearly intended to protect borrowers; its provisions must be read as a whole. First, the statutory maximum, and then the unqualified statement, beginning "in no event." The language that Pacific Plan wants us to disregard was designed to make certain that a borrower would not be charged the maximum where the actual costs incurred by a particular loan were less than the maximum allowed by the statute. Pacific Plan's proposed method unfairly charges an unidentified number of borrowers for expenses incurred in other loan transactions.

---

[4] All of these fees, including the escrow fee, are in addition to the borrower's primary obligations which include a brokerage fee (up to 15 percent of the total amount of the loan; § 10242, subd. (b)(2)), payable to Pacific Plan and interest (at 10 percent; § 10242, subd. (c)), payable to the lender.

As the administrative law judge pointed out, under Pacific Plan's method, where two loans are in the same amount and the fixed costs are identical, the same escrow fee is charged on both transactions. All escrows are not alike even if the dollar amounts of the loan and fixed charges are identical. We can only conclude that the trial court's construction of the statute was the only reasonable one, given the express language and plain meaning of the statute. It follows that Pacific Plan's method of calculation violated section 10242, subdivision (a), which requires some method of cost accounting to protect borrowers.

■ Pacific Plan argues on appeal, as it did below, that the Real Estate Commissioner had failed to prove that its escrow fees were not reasonably earned. However, since Pacific Plan charges the maximum in each instance and makes no effort to relate the amount charged (either on an hourly or item basis) to the expenses incurred in each loan transaction, the Real Estate Commissioner has no yardstick for determining whether Pacific Plan's escrow fees are reasonable in any single instance.

Pacific Plan also argues that it is locked into money losing operations as its escrow operation costs twice what it is permitted to charge. This contention is based on the evidence in the administrative proceedings, which indicated that Pacific Plan sustained an overall loss in its escrow operations.[5] This fact, however, is irrelevant to the issue before us. It does not follow that since Pacific Plan's total cost divided by the number of escrows exceeds the legal maximum, Pacific Plan has, therefore, earned or expended the legal maximum on each transaction. Pacific Plan's losses may be the result of its own methods of operation, inefficiency or lack of competition.[6] Pacific Plan also made no showing that the Real Estate Commissioner's interpretation of the statute led to arbitrary or unreasonable results. ■ "While the right to pursue a lawful business or occupation is a fundamental right [citations], there is no vested right to conduct business free of reasonable governmental rules and regulations"

---

[5] The loss was based on all of the loans handled, even though some were within the exceptions of the statute. To make escrows financially remunerative, Pacific Plan also needed to write the title insurance.

[6] The administrative record indicates that some title companies performed escrow services for lower fees than Pacific Plan. For example, in the Bishop transaction, Pacific Plan charged an escrow fee of $99.20; Transamerica Title's schedules indicated a charge of $45.50 for the escrow service alone, or $40.95 if Transamerica also wrote the title insurance. In the Furrer transaction, Pacific Plan charged $119.40; Transamerica's charges would have been $45.50, or $40.95.

(*Northern Inyo Hosp.* v. *Fair Emp. Practice Com.,* 38 Cal.App.3d 14, 23 [112 Cal.Rptr. 872]).

The judgment is affirmed.

Kane, J., and Rouse, J., concurred.

A petition for a rehearing was denied September 22, 1978, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied November 9, 1978.