[Civ. No. 53467. Second Dist., Div. One. Sept. 13, 1978.]

HOUSING DEVELOPMENT COMPANY et al.,
Plaintiffs and Respondents, v.
LEO B. HOSCHLER, as Registrar, etc., Defendant and Appellant.

**COUNSEL**

Evelle J. Younger, Attorney General, and Antonio J. Merino, Deputy Attorney General, for Defendant and Appellant.

Lucking, Bertelsen, Bysshe, Kuttler & Smiley and William A. Lucking, Jr., for Plaintiffs and Respondents.

## OPINION

**LILLIE, Acting P. J.**—Registrar of Contractors of the Contractors' State License Board of the State of California (Registrar) appeals from judgment in administrative mandamus ordering it to set aside and reconsider its denial of application of Housing Development Company (HDC) for a state contractor's license.

In September 1975 HDC, a limited partnership, filed an application for a state contractor's license; its general partner is Ray C. Skinner. In January 1977, Registrar, who has the responsibility of administering the laws governing the licensing of contractors, filed "Statement of Issues"[1] asserting that HDC's license request be denied. (Gov. Code, § 11504.) In essence, Registrar claimed Skinner had violated Business and Professions Code section 7110 and Labor Code section 227,[2] in that he failed to make contributions to several union trust funds when required to do so. The alleged nonfeasance occurred during the period of January 1971 to April 1973[3] when Skinner acted as the president and managing officer of Home Sales Corporation, doing business as Housing Systems Company (HSC).[4] Two separate obligations formed the basis of Registrar's claim—$17,500 assertedly due under a contract between HSC and the Union Brotherhood of Carpenters and Joiners of America (Union) wherein HSC agreed to make contributions to two trust funds for the benefit of its employees working at its fabricating plant; and $5,685.67 assertedly due under a "Master Labor Agreement" entered into by, among others, Union and the Building Industry Association of California, Inc. of which HSC was a

---

[1]The "Statement of Issues" was directed to the conduct of Skinner because as HDC's general partner, he had to personally meet all of the requirements for the issuance of a license (Bus. & Prof. Code, §§ 7068, 7068.1, 7071); if he had engaged in conduct that would constitute grounds for disciplinary action, the license could be denied (Bus. & Prof. Code, §§ 480, subd. (a)(3) and 7069).

[2]Business and Professions Code section 7110 provides in pertinent part: "Willful or deliberate disregard and violation of the . . . labor laws . . . of the state . . . constitutes a cause of disciplinary action." Labor Code section 227 states, inter alia, "Whenever an employer has agreed . . . to make payments to a health or welfare fund, pension fund . . . or other such plan for the benefit of the employees, . . . it shall be unlawful for such an employer willfully or with intent to defraud to fail to make the payments required by the terms of any such agreement . . . ."

[3]Both parties concede that as a result of a clerical error, the Registrar's findings incorrectly recite that HSC's obligation to make contributions continued until April 30, 1974; the correct date is April 30, 1973.

[4]HDC does not question the merits of the proposition that HSC's alleged violation of Business and Professions Code section 7110 was a relevant factor that could be considered in evaluating HDC's application for a contractor's license (§ 800, subd. (a) of tit. 16 of the Cal. Admin. Code).

member, requiring the payment of money into the union trust fund by all employers who belonged to the association irrespective of whether their employees were union members.[5]

In April 1977 an administrative hearing was held, and Skinner appeared on behalf of HDC (Bus. & Prof. Code, § 7073). He asserted that whether any money was owed to the trust funds was a matter pending in a civil suit commenced by Union against HSC prior to the filing of HDC's license application; and that Union held money that HSC had inadvertently paid to Union. He also referred to a letter written by HSC to Union in December 1972 in which it declared it was not bound by the agreement because of what it viewed as Union's breach of several terms of the contract. Skinner sought dismissal of "all charges" because of the pending civil action, and asserted that to do otherwise would violate due process.

The administrative law judge recommended denial of HDC's application and found that Skinner had violated Business and Professions Code section 7110 and Labor Code section 227 by failing to make the appropriate contributions to the union trust funds.[6]

Registrar adopted the proposed disposition whereupon HDC filed petition for reconsideration. In addition to reiterating the defenses advanced at the administrative hearing, the petition raised for the first time the contention that the three-year statute of limitations embodied in Business and Professions Code section 7091[7] precluded Registrar from considering HSC's failure to make payments to union trust funds when it evaluated HDC's license application. All of the acts charged occurred more than three years prior to the filing of "Statement of Issues"; HDC therefore argued that because the allegations were not made within the time period prescribed by Business and Professions Code section 7071, Registrar's consideration of them was improper. Registrar denied the petition for reconsideration.

---

[5]These two specified amounts include liquidated damages as well as reimbursement to Union for auditing costs incurred as a result of analyzing HSC's records.

[6]The "Statement of Issues" also contained an allegation that Skinner had made an intentional factual misrepresentation in the application for HDC's license. (Bus. & Prof. Code, § 480, subd. (b).) The administrative law judge found said charge to be untrue.

[7]Business and Professions Code section 7091 provides in pertinent part: "All accusations against licensees shall be filed within three years after the act or omission alleged as to ground of the disciplinary action . . . ."

Thereafter HDC sought a writ of mandate in the superior court to compel Registrar to reconsider its action; peremptory writ was issued. After stating that the independent judgment test governed its review of the administrative determination because a "fundamental vested right" was involved, the court found not only that the weight of the evidence did not support Registrar's disposition, but the decision had been arbitrary and capricious. In particular, the court ruled: (1) the three-year statute of limitations (§ 7091, Bus. & Prof. Code) prevented Registrar from filing objections to HDC's application based upon the ground of nonpayment to the union trust funds; (2) HDC's failure to raise the defense of the statute of limitations at the original administrative hearing did not constitute a waiver of its rights to subsequently assert it; (3) Skinner's failure to make the payments did not fall within the proscription of Labor Code section 227 because in good faith he was contesting the validity of the claim so that his actions were done neither "wilfully" nor with "the intent to defraud"; and (4) the pending civil case instituted by Union against HSC precluded the licensing hearing from continuing because only a court could decide the issue of whether in fact Skinner owed the amount claimed. The court awarded costs and attorney's fees (Gov. Code, § 800) to HDC.

At the outset we hold that the trial court's invocation of the independent judgment rule of review of the evidence in the administrative record instead of the substantial evidence rule was erroneous.[8] The independent judgment test is used when a trial court reviews an administrative decision that substantially affects a fundamental vested right. (*Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 822-823 [140 Cal.Rptr. 442, 567 P.2d 1162].) In the case at bench the trial court stated two reasons for its holding that the administrative decision before it had a substantial effect on a right that was both vested and fundamental.

The first reason, with which we do not agree, was that Registrar's action had "the effect of depriving [Skinner] of his right to earn his living in the occupation of his choice and experience and thus the denial . . . of the license is and should be treated and considered by the same tests as applied to suspension or revocation of licenses." While it is true that an agency's revocation of a party's license to practice in a particular

---

[8]We note that in its findings of fact and conclusions of law the trial court states that its result would be reached by using either of the two standards of review. Nevertheless we address the issue of the applicability of the independent judgment standard of review so as to make for a more lucid analysis of the contentions.

profession is subject to an independent judgment review by a trial court of the facts underlying that decision (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 146 [93 Cal.Rptr. 234, 481 P.2d 242]; *Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 310, 307-308 [196 P.2d 20]), it is well settled that an agency's initial determination as to whether a party possesses the requisite qualifications to enter a trade will be upheld unless the administrative decision lacks substantial evidentiary support. (*Harlow* v. *Carleson* (1976) 16 Cal.3d 731, 735 [129 Cal.Rptr. 298, 548 P.2d 698]; *So. Cal. Jockey Club* v. *Cal. etc. Racing Bd.* (1950) 36 Cal.2d 167, 174-176 [223 P.2d 1]; *McDonough* v. *Goodcell* (1939) 13 Cal.2d 741, 752-753 [91 P.2d 1035, 123 A.L.R. 1205].) Trial courts defer to the expertise found in the administrative agency that evaluates and rules on initial application for licenses on the rationale that the judicial system is "relatively ill-equipped" to make a determination as to the qualifications of an individual to practice a particular trade. (*Bixby* v. *Pierno, supra,* 4 Cal.3d at p. 146.)

Although the distinction made between the initial denial of a license and the revocation of a license has been criticized as being unsound (see, e.g., *Bixby* v. *Pierno, supra,* 4 Cal.3d at p. 161 (conc. opn. of Mosk, J.); and *So. Cal. Jockey Club* v. *Cal. etc. Racing Bd., supra,* 36 Cal.2d at pp. 179-180 (dis. opn. of Traynor, J.)), both we and the trial court are bound by the holdings of our Supreme Court on this point. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

The second factor stated by the trial court to justify its use of an independent standard of review is equally unpersuasive. The court's legal conclusion that Skinner had "a judicial vested right as a licentiate" does not flow from its factual finding that HSC, of which Skinner had been the "responsible managing officer," had previously possessed a contractor's license.[9] In the instant matter, we are concerned with the denial of HDC's application for an *original* license. HDC cannot be said to have acquired a vested right to a contractor's license merely because its qualifying partner had previous affiliations with a company that had once been so licensed.

HDC attempts to avoid the force of this conclusion by pointing to the fact that when it filed its application in September 1975 the Tierra Rejada Company, whose general partner and "Responsible Managing Officer"

---

[9]Prior to filing license application by HDC, HSC's license expired after having been suspended in October 1973 as a result of matters unrelated to the present case.

was Skinner, held a valid contractor's license.[10] From that circumstance, HDC urges that Skinner had a vested interest in his status as a licensee. The argument lacks merit.

Whatever rights may have existed in September 1975 because of Tierra Rejada's status as a licensed contractor, they did not inure to the benefit of HDC, a separate business entity. Skinner, et al., elected to file an application for an *original* license on behalf of HDC, a new partnership. That decision having been made, Skinner's ability to comply with the requisite requirements for issuance of a license was once again properly before Registrar. The fact that Skinner as the general partner of Tierra Rejada had been earlier found to be qualified, did not mandate automatic approval of HDC's license, particularly in light of the absence of identity of partners in the two partnerships.[11] (See *Brunzell Constr. Co. v. Barton Development Co.* (1966) 240 Cal.App.2d 442, 445 [49 Cal.Rptr. 667].) Registrar's prior decision to issue a license to Tierra Rejada did not preclude it from investigating and questioning whether Skinner possessed the necessary qualifications for a new license at the time the application was filed on behalf of HDC.

It is evident that HDC did not have a vested right to be a licensed contractor thus, the trial court's use of the independent judgment test in reviewing Registrar's decision was error. However, this does not prevent our review of the underlying administrative action (*Savelli* v. *Board of Medical Examiners* (1964) 229 Cal.App.2d 124, 133 [40 Cal.Rptr. 171]), and we now examine the record to decide whether substantial evidence supports Registrar's decision to deny HDC's license application. (*Northern Inyo Hosp.* v. *Fair Emp. Practice Com.* (1974) 38 Cal.App.3d 14, 23-24 [112 Cal.Rptr. 872].) ▪ Neither we nor the trial court can overturn Registrar's decision " 'for the reason that it is considered that a contrary finding would have been equally or more reasonable.' " (*Boreta Enterprises, Inc.* v. *Department of Alcoholic Beverage Control* (1970) 2 Cal.3d 85, 94 [84 Cal.Rptr. 113, 465 P.2d 1]); and the administrative action denying HDC's application will be set aside only if Registrar abused its discretionary powers by reaching a result that is so lacking in evidentiary support that it can be characterized as unreasonable.

---

[10]Tierra Rejada's license was suspended twice in March 1976, and cancelled soon thereafter by agreement of its partners. Thus it was not in effect when the administrative hearing was held on HDC's license application.

[11]Skinner was HDC's general partner; Harold and Ruth Pratt were its limited partners. As to Tierra Rejada, Skinner was listed as its qualifying partner and Joseph Lathrop, Agnas Lathrop, William Volk and Annette Volk were limited partners.

█ The first issue is whether the evidence is legally sufficient to support Registrar's denial of HDC's license inasmuch as HSC's failure to make the subject payments occurred more than three years prior to the filing of the "Statement of Issues." Section 7091, Business and Professions Code is here inapplicable inasmuch as the statute on its face makes clear that it applies only to attempts to suspend or revoke an already existing license. One of the key purposes of the contractor's license law is to protect the public against dishonesty and incompetency in the administration of the contracting business. (*Lewis & Queen* v. *N. M. Ball Sons* (1957) 48 Cal.2d 141, 149-150 [308 P.2d 713]; *Rushing* v. *Powell* (1976) 61 Cal.App.3d 597, 604-605 [130 Cal.Rptr. 110].) █ The function of an administrative proceeding such as the one here is not criminal in that its goal is not to punish the prospective licensee but to protect the public. The hearing is to insure that the privileges granted under the license will not be exercised in derogation of the public interest. (See *West Coast etc. Co.* v. *Contractors' etc. Bd.* (1945) 72 Cal.App.2d 287, 301-302 [164 P.2d 811].) █ Consequently, the manner in which Skinner, through the business entity of HSC, had previously conducted relations with Union was a relevant factor to consider in evaluating HDC's license application because of disruptions that can be caused both to a particular construction project and to the economy in general by acrimonious disputes between labor and management. Thus, evidence of prior conduct that tended to show that Skinner would provoke such situations by failing to perform legally bargained for promises was properly considered[12] regardless of whether or not Registrar, at that point in time, could discipline Skinner for those particular actions. For us to reach a contrary result would create an anomalous situation. An individual could engage in actions for which he could be legitimately disciplined if he then held a license but said conduct would not prevent him from later obtaining a license if he waited three years to file his application. We find the statute of limitations embodied in Business and Professions Code section 7091 to be inapposite to the proceedings following HDC's application for an original license.

---

[12]In this regard it is interesting to note the following testimony of Skinner given at the license application hearing. After noting that the administrative law judge was the same individual who had previously suspended the HSC license. Skinner stated: ". . . the main reason why the [HSC] suspension occurred [for wilful failure to prosecute construction projects thereby causing material injury to homeowners (Bus. & Prof. Code, § 7119)] was that I was unable to obtain employees, other than a few very loyal men who had been with me for some time and were willing to defy the union and proceed with the work. And we had far more work in process than could be handled by these few men. [¶] So this is not something new. This is a matter of a dispute between myself and the union of long-standing. And it seems to be another chapter of that at this time."

■ Having determined that HSC's delinquent union trust fund contributions were a factor that could be considered by Registrar, we now turn to the issue of whether that conduct fell within the proscription of Labor Code section 227.

■ As applied herein, the term "wilful" as used in Labor Code section 227 connotes that Skinner knew that the terms of the two agreements dictated payments into the union trust fund and that HSC had the financial ability to pay but he nevertheless intentionally refused to make the monetary contributions. ■ By way of defense, HDC asserts that Skinner entertained a good faith belief that the money was not due, thereby vitiating any potential violation of section 227. (See *In re Trombley* (1948) 31 Cal.2d 801, 807-808 [193 P.2d 734]; *Davis* v. *Morris* (1940) 37 Cal.App.2d 269, 274 [99 P.2d 345]; Pen. Code, § 7, subd. 1.) We reject the contention.

Our review of the record reveals these salient points: (1) For the period of January 1971 to August 1972, HSC failed to contribute over $8,500 to union trust funds as it was required to do by the terms of "Master Labor Agreement" and the contract between HSC and Union. (2) Three of the employees for whose benefit those contributions should have been made were union members. (3) In November 1972 Union sent two letters to HSC asserting that the company was delinquent in not having made the contributions which were compelled by the terms of the two aforementioned agreements. (4) In December 1972 Skinner wrote to Union and stated that he no longer intended to be bound by the agreement executed between HSC and Union. The explanation he proffered was that Union had refused to accept as members several of HSC's employees who desired to join Union. Thus, for a period of 20 months prior to advising Union that it no longer considered itself bound by their agreement, HSC failed to make the requisite contributions for three Union affiliated employees. Further, Union again sent letters to HSC in March 1973 and June 1974 about the subject payments but apparently received no additional response from HSC. Union subsequently brought suit to recover the contested payments.

From the aforementioned evidence, Registrar could reasonably draw the inference that Skinner's failure to make the payments was not based upon a good faith dispute; such finding is supported by substantial evidence. It was the sole province of the trier of fact to determine HSC's good faith, and the trial court could not interfere with that conclusion

merely because Skinner's self-serving statements produced a conflict in the evidence.

Finally, we address the issue of the legal effect of the civil litigation in progress between Union and HSC. In September 1974 Union sued to recover the money it asserted HSC should have paid into union trust funds. In this regard, the trial court herein found that the pending civil litigation deprived Registrar of jurisdiction, a finding lacking in legal support. Whatever issue may be construed as being "common" to the civil lawsuit and the administrative hearing, manifestly was not a jurisdictional question. The trial court's holding that the two tribunals held mutually exclusive jurisdiction so as to deprive the one invoked later in time (Registrar) of the power to act was erroneous. (See *Contractors' State License Board* v. *Superior Court* (1960) 187 Cal.App.2d 557, 561-562 [10 Cal.Rptr. 95].)

■ The trial court also stated that Registrar had denied HDC a "fair trial" by not properly considering the legal issues posed by the existence of the civil action between HSC and Union. In particular, it concurred with HDC's contention, tendered in its writ petition, that the contractor's license should have been issued to HDC subject to future disciplinary proceedings if the union prevailed in its lawsuit. We do not agree. HDC has cited no authority, nor can we find any, to support the proposition that a conditional or probationary contractor's license should have been issued to HDC. The Contractor's License Law simply does not provide for such.[13] Accordingly HDC was not entitled to that manner of relief.

Moreover, HDC may not now complain that the licensing hearing should have been stayed pending conclusion of the civil action. HDC was precluded from raising that claim by way of writ petition because it did not exhaust its administrative remedy. (See *Contractor's State License Board* v. *Superior Court, supra,* 187 Cal.App.2d 557, 562.) Although Skinner referred to the lawsuit several times in his testimony and reference was made to it in the documents filed below, no explicit oral or written request was ever tendered to the administrative judge or Registrar to stay the hearing because of the civil litigation.

---

[13]It is interesting to note that were this recommendation followed, the statute of limitations (Bus. & Prof. Code, § 7091) would prevent Registrar from later disciplining HDC even were Union to prevail on the merits in its lawsuit.

The judgment is reversed with directions to enter judgment denying the petition for writ of mandate.

Hanson, J., and Alarcon, J.,* concurred.

A petition for a rehearing was denied October 4, 1978, and respondents' petition for a hearing by the Supreme Court was denied November 9, 1978. Bird, C. J., did not participate therein.

*Assigned by the Chairperson of the Judicial Council.