Filed 2/27/13  Ogundare v. Department of Indust. Relations etc. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| AYODEJI A. OGUNDARE et al., <br><br> Respondents, <br><br> v. <br><br> DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF LABOR STANDARDS ENFORCEMENT, <br><br> Appellant. | F061162 <br><br> (Super. Ct. No. CV268425) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Linda S. Etienne, Commissioner.

David D. Cross for Appellant.

Dowling, Aaron & Keeler, Daniel K. Klingenberger and Stephanie Hamilton Borchers for Respondents.

-ooOoo-

Ayodeji A. Ogundare, individually and doing business as Pacific Engineering Company (together Pacific), filed a petition for writ of administrative mandate asking the trial court to set aside a "debarment"[1] decision adopted by the State of California, Department of Industrial Relations, Division of Labor Standards Enforcement (DLSE) that would have precluded Pacific from bidding or working on public works construction projects for one year. The trial court reviewed the administrative record and concluded there was no credible evidence to support a finding that Pacific violated prevailing wage laws *with intent to defraud*, which finding was necessary in this case for debarment to be imposed under Labor Code section 1777.1.[2] Accordingly, the trial court granted Pacific's petition. DLSE appeals, arguing that (i) the trial court failed to apply the correct standard of review (i.e., the substantial evidence test) and (ii) there was substantial evidence in the record to support the administrative finding of intent to defraud. We agree on both points and will reverse.

## FACTS AND PROCEDURAL HISTORY

Pacific was a general engineering construction company based in Bakersfield, California, that performed concrete (flat) and underground (water, soil and sewer) construction work. Ninety-nine percent of the projects undertaken by Pacific were public works projects. Pacific was owned and managed by Ayodeji A. Ogundare (Ogundare), who was a licensed contractor.

In 2007 and 2008, DLSE conducted investigations regarding public works projects on which Pacific was a subcontractor, including a project in Delano for sewer and

---

[1] Debarment occurs when an individual or entity is excluded from bidding, contracting or subcontracting on public works projects, usually for a defined period of time, due to violations of public contract law or other wrongful conduct. (See Labor Code, § 1777.1, subd. (b); *Golden Day Schools, Inc. v. State Dept. of Education* (2000) 83 Cal.App.4th 695, 703.)

[2] Unless otherwise indicated, all further statutory references are to the Labor Code.

sidewalk construction (the Delano project), a project in Madera to build a youth center (the Madera project), and a project in Exeter to construct a school building (the Exeter project). As a result of these investigations, DLSE notified Pacific of apparent violations of laws relating to public contracts and issued civil wage and penalty assessments against Pacific. Additionally, DLSE initiated the instant debarment proceedings against Pacific based on particular allegations that Pacific violated prevailing wage laws in a manner that was allegedly willful and with intent to defraud. The present appeal concerns the debarment proceedings only.[3]

The debarment proceedings were commenced against Pacific in December 2008, when DLSE filed a statement of alleged violations, seeking Pacific's debarment pursuant to the provisions of section 1777.1.

The hearing of the debarment proceedings was held on April 30, 2009, before a hearing officer. Pacific and DLSE were each represented by counsel and following the presentation of evidence and closing arguments, the hearing officer took the matter under submission. On August 6, 2009, the hearing officer issued a written statement of decision that was adopted the same day by DLSE as the decision of that agency. The statement of decision stated that Pacific committed willful violations with intent to defraud, and a one-year debarment of Pacific was ordered by DLSE therein.[4]

The statement of decision stated the following principal conclusions: "[Pacific] 'willfully' and with 'intent to defraud' violated the public works laws in not paying prevailing wages to one worker, Laborer Miguel Ibarra and [in not paying] prevailing

---

**3** A prior appeal was made concerning one of the monetary wage and penalty assessments against Pacific and another contractor. (See *Department of Industrial Relations v. Davis Moreno Construction, Inc.* (2011) 193 Cal.App.4th 560.)

**4** When we refer to the statement of decision herein, we mean the administrative decision made by the hearing officer and adopted by DLSE, *not* the trial court's decision on the petition for administrative writ of mandate.

overtime to two workers, Laborers Javier Perez (on the Madera project) and Juan Ramirez (on the Exeter project). Although the DLSE argued that [Pacific] had a pattern and practice of failing to pay prevailing wages and prevailing overtime on the three projects at issue as well as on previous projects … the evidence simply was not presented at this hearing to establish this was the case." Further, as to the alleged inadequacy of Pacific's payroll records, the statement of decision stated that Pacific willfully violated provisions of section 1776 by submitting certified payroll records to DLSE, prime contractors, awarding bodies and others, that were "not accurate." However, Pacific's failures to provide adequate payroll records, although willful, were not sufficient in themselves to show intent to defraud.

On the specific issue of intent to defraud, the statement of decision elaborated: "[Miguel] Ibarra's testimony that he was always paid $15.00 per hour on the Delano project and worked 61 hours during the week ending August 4, 2007 is credible especially since he provided a copy of a paycheck corroborating his testimony. [Pacific] knew that payment to this individual was not in compliance with the public works laws as evidenced by the fact that the check shows payment at $15.00 per hour for 61 hours worked yet [Pacific] submitted to the DLSE certified payroll records listing the correct prevailing wage rate that should have been paid and listing only 25 hours worked for the week ending August 4, 2007. In this regard, [Pacific] 'willfully' violated the public works laws. [Pacific] also violated the public works laws with 'intent to defraud' evidenced by the fact that he put the required amount of payment on the certified payroll records he signed under penalty of perjury knowing that he paid a much lower rate." Additionally, the statement of decision indicated that Pacific's intent to defraud was further corroborated by the failure to pay overtime prevailing wages to Javier Perez and Juan Ramirez, since it appeared that Pacific "was attempting to split the total hours worked by Perez and Ramirez, so as not to have to pay or report prevailing overtime that was in fact worked by both workers."

4.

As a consequence of the violations and of the finding of intent to defraud, the statement of decision ordered that Pacific "shall be ineligible to, and shall not, bid on or be awarded a contract for a public works project, and shall not perform work as a subcontractor on a public work … for a period of one (1) year .…"

On September 22, 2009, after DLSE adopted the statement of decision as the decision of DLSE in this matter, Pacific filed a petition for writ of administrative mandate pursuant to Code of Civil Procedure section 1094.5, seeking to have the order of debarment set aside on the ground that the order was not supported by the record. A first amended petition for writ of administrative mandate was filed by Pacific on December 4, 2009.

On August 16, 2010, the trial court issued its written order ruling on the petition for administrative writ of mandate. The trial court applied the "independent judgment" standard of review to the administrative decision on the assumption that Pacific's interest in bidding on public contracts was a "fundamental vested right." (Capitalization omitted.) In applying that standard to the record before it, the trial court found that "there was no credible evidence offered by [DLSE] to support a finding of an intent to defraud .…" (Capitalization omitted.) Moreover, the trial court explained that without a finding of intent to defraud pursuant to section 1777.1, subdivision (a), the mere willful violations in this case could not (by themselves) justify debarment since there were no prior willful violations as required by section 1777.1, subdivision (b). (Cf., § 1777.1, subd. (a) [debarment appropriate if violation of prevailing wage law was found to be with "intent to defraud"]; *id*., subd. (b) [debarment for "willful" violations appropriate only if a prior willful violation occurred in past three years].) Accordingly, no basis existed for debarment under section 1777.1, and the trial court granted Pacific's petition.

DLSE timely filed its notice of appeal.

## DISCUSSION

### I. Standard of Review

Since our standard of review is affected by the standard of review that was applicable in the trial court, we will begin with a summary of the law regarding the trial court's standard of review.

#### A. In the Trial Court

"Section 1094.5 of the Code of Civil Procedure governs judicial review by administrative mandate of any final decision or order rendered by an administrative agency. A trial court's review of an adjudicatory administrative decision is subject to two possible standards of review depending upon the nature of the right involved. [Citation.] If the administrative decision substantially affects a fundamental vested right, the trial court must exercise its independent judgment on the evidence. [Citations.] The trial court must not only examine the administrative record for errors of law, but must also conduct an independent review of the entire record to determine whether the weight of the evidence supports the administrative findings. [Citation.] If, on the other hand, the administrative decision neither involves nor substantially affects a fundamental vested right, the trial court's review is limited to determining whether the administrative findings are supported by substantial evidence. [Citations.]" (*Wences v. City of Los Angeles* (2009) 177 Cal.App.4th 305, 313, relying on *Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 32 & *Bixby v. Pierno* (1971) 4 Cal.3d 130, 143-144.)

Whether an administrative decision substantially affects a fundamental vested right must be determined on a case-by-case basis. (*Bixby v. Pierno*, *supra*, 4 Cal.3d at p. 144.) "A right may be deemed fundamental 'on either or both of two bases: (1) the character and quality of its economic aspect; [or] (2) the character and quality of its human aspect.' [Citation.] 'The ultimate question in each case is whether the affected right is deemed to be of sufficient significance to preclude its extinction or abridgement

6.

by a body lacking *judicial* power. [Citation.]' [Citation.]" (*Wences v. City of Los Angeles*, *supra*, 177 Cal.App.4th at pp. 313-314.) "In determining whether the right is fundamental the courts do not alone weigh the economic aspect of it, but the effect of it in human terms and the importance of it to the individual in the life situation." (*Bixby v. Pierno*, *supra*, at p. 144.) For example, an agency's decision to revoke a professional license or the right to practice one's trade or profession has been found to affect the person's fundamental vested rights. (*Rand v. Board of Psychology* (2012) 206 Cal.App.4th 565, 574.) On the other hand, "as a general rule, when a case involves or affects purely economic interests, courts are far less likely to find a right to be of the fundamental vested character. [Citations.]" (*JKH Enterprises, Inc. v. Department of Industrial Relations* (2006) 142 Cal.App.4th 1046, 1060 [cases digested] (*JKH Enterprises*).)

### B. In the Court of Appeal

"Regardless of the nature of the right involved or the standard of judicial review applied in the trial court, an appellate court reviewing the superior court's administrative mandamus decision always applies a substantial evidence standard. [Citations.]" (*JKH Enterprises*, *supra*, 142 Cal.App.4th at p. 1058.) However, "the reviewing court's *focus* changes, depending on which standard of review governed at trial." (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 218, italics added.) "[D]epending on whether the trial court exercised independent judgment or applied the substantial evidence test, the appellate court will review the record to determine whether either the trial court's judgment or the agency's findings, respectively, are supported by substantial evidence. [Citation.] If a fundamental vested right was involved and the trial court therefore exercised independent judgment, it is the trial court's judgment that is the subject of appellate court review. [Citations.] On the other hand, if the superior court properly applied substantial evidence review because no fundamental vested right was involved, then the appellate court's function is identical to that of the trial court. It

reviews the administrative record to determine whether the agency's findings were supported by substantial evidence, resolving all conflicts in the evidence and drawing all inferences in support of them. [Citations.]" (*JKH Enterprises*, *supra*, 142 Cal.App.4th at p. 1058, fn. omitted.)

## II. The Trial Court Should Have Applied Substantial Evidence Test

Looking to the character and quality of the right involved, we conclude that Pacific's one-year debarment from being able to bid or work on public projects did not implicate a fundamental vested right. Pacific was not prevented from bidding or working on all construction projects, but only from certain kinds of work (i.e., public projects). Hence, it appears that the interest affected was purely economic in this case. (See, e.g., *JKH Enterprises*, *supra*, 142 Cal.App.4th at pp. 1061-1062 [stop work order and penalty issued by Department of Industrial Relations due to employer's failure to provide workers' compensation to employees did not implicate fundamental vested right— interest involved "purely economic"]; *Kawasaki Motors Corp. v. Superior Court* (2000) 85 Cal.App.4th 200, 204 [protest to New Motor Vehicle Board of manufacturer's termination of automotive dealer franchise reviewed under substantial evidence test as purely economic contractual privileges were involved]; *Standard Oil Co. v. Feldstein* (1980) 105 Cal.App.3d 590, 604-605 [no fundamental right to operate four rather than three refinery units even though return on investment may be lower].)

It follows that the trial court applied the wrong standard. It should have reviewed DLSE's administrative decision under the substantial evidence test rather than under the independent judgment standard of review. However, we need not send the matter back to the trial court to apply the proper standard. Where the trial court erroneously uses the independent judgment standard, an appellate court may proceed to review the matter by applying the substantial evidence standard to the administrative findings. (*Housing Development Co. v. Hoschler* (1978) 85 Cal.App.3d 379, 387; *Savelli v. Board of*

*Medical Examiners* (1964) 229 Cal.App.2d 124, 133; 2A Cal.Jur.3d (2007) Administrative Law, § 754, p. 230.)

### III. Administrative Decision Supported by Substantial Evidence

The question remains whether a different result would have been required in the present case under the substantial evidence test. This test "requires a review of the entire record to determine whether findings of an administrative decision are supported by substantial evidence." (*Northern Inyo Hosp. v. Fair Emp. Practice Com.* (1974) 38 Cal.App.3d 14, 23-24.) If the administrative decision is supported by substantial evidence, we may not overturn it merely because a contrary finding would have been equally or more reasonable. (*Id.* at p. 24) "In general, substantial evidence has been defined in two ways: first, as evidence of ""'ponderable legal significance … reasonable in nature, credible, and of solid value'"" [citation]; and second, as "'relevant evidence that a reasonable mind might accept as adequate to support a conclusion"' [citation]." (*County of San Diego v. Assessment Appeals Bd. No. 2* (1983) 148 Cal.App.3d 548, 555) "Unless the finding, viewed in the light of the entire record, is so lacking in evidentiary support as to render it unreasonable, it may not be set aside." (*Northern Inyo Hosp. v. Fair Emp. Practice Com.*, *supra*, at p. 24.)

In order to impose debarment in the present case, it was necessary for DLSE to establish intent to defraud under section 1777.1. That statute provides, in relevant part, as follows: "Whenever a contractor or subcontractor performing a public works project pursuant to this chapter is found by the Labor Commissioner to be in violation of this chapter with intent to defraud, … the contractor or subcontractor … is ineligible for a period of not less than one year or more than three years to do either of the following: [¶] (1) Bid on or be awarded a contract for a public works project. [¶] (2) Perform work as a subcontractor on a public works project." (§ 1777.1, subd. (a)(1) & (2).) The term "intent to defraud" is defined in the applicable regulations as follows: "'Intent to defraud' means the intent to deceive another person or entity, as defined in this article,

9.

and to induce such other person or entity, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property of any kind." (Cal. Code Regs., tit. 8, § 16800.)

Here, as noted above, the statement of decision adopted by DLSE explained that intent to defraud was found based on (among other things) the following: "[Miguel] Ibarra's testimony that he was always paid $15.00 per hour on the Delano project and worked 61 hours during the week ending August 4, 2007 is credible especially since he provided a copy of a paycheck corroborating his testimony. [Pacific] knew that payment to this individual was not in compliance with the public works laws as evidenced by the fact that the check shows payment at $15.00 per hour for 61 hours worked yet [Pacific] submitted to the DLSE certified payroll records listing the correct prevailing wage rate that should have been paid and listing only 25 hours worked for the week ending August 4, 2007. In this regard, [Pacific] 'willfully' violated the public works laws. [Pacific] also violated the public works laws with 'intent to defraud' evidenced by the fact that he put the required amount of payment on the certified payroll records he signed under penalty of perjury knowing that he paid a much lower rate." Additionally, the statement of decision indicated that Pacific's intent to defraud was further corroborated by the failure to pay overtime prevailing wages to Javier Perez and Juan Ramirez, since it appeared that Pacific "was attempting to split the total hours worked by Perez and Ramirez, so as not to have to pay or report prevailing overtime that was in fact worked by both workers."

The parties, like the trial court, have placed primary emphasis on the evidence relating to Miquel Ibarra's wages. DLSE argues that such evidence was sufficient to reasonably allow the conclusion that Pacific acted with an intent to defraud. Pacific, on the other hand, argues that in light of the entire record, the evidence was inadequate to support that conclusion.

10.

We'll begin with Pacific's position. Pacific argues that since Ibarra testified he did not keep a record of the number of hours he worked for any particular week and he was unsure of the total hours he worked on the particular week reflected on the paycheck introduced into evidence (i.e., the week ending August 4, 2007), it was not substantiated that he was paid only $15 per hour. Pacific also claims that the large discrepancy between Ibarra's paycheck (showing Ibarra was paid $15 per hour) and the certified payroll records (showing he was paid a prevailing wage of $36.10 and worked only 25 hours that week) did not show intent to defraud. In that regard, Pacific points out that although the statement of decision noted the certified payroll records were signed (by Ogundare) under penalty of perjury, the record on appeal does not include any signature. Ogundare's name is printed on the signature line, but no signature is present. Also, Pacific refers to the fact that the statement of decision characterized Pacific's inaccurate payroll records as a "'willful'" violation of the recordkeeping statute (§ 1776), but not a fraudulent violation of that statute.[5] Finally, Pacific points out that three other employees testified that they had been paid properly (i.e., prevailing wages) on the same job.

DLSE's position is that intent to defraud was established by the evidence, in particular Ibarra's testimony that he was paid $15 per hour as confirmed by the paycheck for the week of August 4, 2007, and the certified payroll records for that same week showing that Ibarra was paid prevailing wages of $36.10 per hour and only worked 25 hours that week. We agree with DLSE. Although Ibarra did not keep a record of his hours, his testimony that he was paid $15 per hour was clearly supported by the

---

[5] Ogundare testified at the administrative hearing about there being some confusion due to (among other things) some turnover or inexperience of employees in payroll, followed by hiring an outside accountant, and it was argued that any errors were clerical mistakes. The statement of decision rejected that explanation as inherently implausible in light of Ogandare's (Pacific's) extensive experience in public contracts and knowledge of recordkeeping that is required.

paycheck. The notation on that check indicated he was being paid for 61 hours worked on the Delano job, and the total amount paid was $915. Doing the math, this equates to $15 per hour. For the identical week, the certified payroll records reported by Pacific to DLSE pursuant to section 1776 (whether or not personally signed under oath by Ogundare) represented to DLSE that Ibarra was making $36.10 per hour and worked only 25 hours. (See § 1776, subd. (a)(1) & (2) [records must include hours worked, wages paid, and declaration stating compliance with § 1771 (prevailing wage law)].) No satisfactory explanation was ever provided by Pacific for this glaring discrepancy between Ibarra's actual paycheck reflecting $15 per hour and the contrary representations by Pacific to DSLE. A party's intent, including intent to defraud, may be shown by circumstantial evidence. (1 Witkin, Cal. Evidence (5th ed., 2012) Circumstantial Evidence, § 122, p. 528; *People v. Phillips* (1960) 186 Cal.App.2d 231, 240.) A reasonable conclusion from this evidence is that Pacific violated the prevailing wage law with intent to defraud.

## DISPOSITION

The trial court's judgment granting Pacific's writ of administrative mandate is reversed. The matter is remanded to the trial court with instructions that a new order be entered by the trial court denying the writ and affirming DLSE's administrative decision to impose a one-year debarment. Costs on appeal are awarded to DLSE.

_____
Kane, J.

WE CONCUR:

_____
Wiseman, Acting P.J.

_____
Detjen, J.

12.