Filed 6/1/15  Shew v. Dept. of Insurance CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| WELLMAN DALE SHEW, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> DEPARTMENT OF INSURANCE et al., <br><br> Defendants and Respondents. | F069232 <br><br> (Super. Ct. No. 13CECG02067) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Carlos A. Cabrera, Judge.

McCormick, Barstow, Sheppard, Wayte & Carruth and Scott M. Reddie for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Paul D. Gifford, Assistant Attorney General, Molly K. Mosley and Serajul F. Ali, Deputy Attorneys General, for Defendants and Respondents.

-ooOoo-

Appellant, Wellman Dale Shew, challenges the revocation of his insurance license. Respondents, the Department of Insurance and Insurance Commissioner Dave Jones (collectively Department), revoked appellant's license based on appellant having been convicted of two misdemeanor offenses for sexually related conduct. Appellant had secretly video recorded a female employee in his insurance office's bathroom over several weeks and had secretly exposed and photographed the breasts of a sleeping woman.

At his administrative hearing, appellant did not dispute the facts underlying his criminal convictions. Rather, appellant attributed his behavior to his pornography addiction and claimed that he had been successfully rehabilitated.

The administrative law judge (ALJ) concluded appellant's rehabilitative efforts were incomplete because appellant did not address rehabilitation for the actual crimes and did not appreciate the seriousness of his offense. Instead, appellant focused largely, if not solely, on recovery from an addictive disorder. The Department adopted the ALJ's recommendation that appellant's license be revoked.

Appellant filed a petition for administrative mandamus in the trial court seeking to overturn the Department's revocation of his license. The trial court affirmed the Department's decision.

On appeal, appellant argues the ALJ's key findings that were adopted by the trial court are not supported by the weight of the evidence. According to appellant, the ALJ in effect dismissed all the actual evidence of rehabilitation and imposed the harshest penalty possible. Appellant further argues the trial court committed reversible error when it refused to issue a statement of decision.

The record supports the decision to revoke appellant's insurance license. Further, the trial court's error in refusing to issue a statement of decision was not prejudicial. Accordingly, the judgment will be affirmed.

2.

# BACKGROUND

Appellant was licensed by the Department in 1982.

In 2011, appellant was convicted of a misdemeanor in California. Appellant had video recorded a female employee with a hidden camera in his insurance office's bathroom without the employee's knowledge or consent. Appellant video recorded his employee multiple times over a period of approximately four weeks in early 2010. The images were discovered when appellant gave his computer drives to another individual. This individual contacted the police department and an investigation followed.

During this investigation, the police also found compromising photographs appellant had secretly taken of another woman in 2005. Appellant and this woman had been friends for many years and were sharing a room in Nevada during a volleyball tournament. While this woman was sleeping, appellant pulled up her shirt and took pictures of her exposed breasts. After the police discovered these 2005 photographs, appellant met with this victim and admitted to her that he had taken the pictures. Appellant was thereafter convicted of a misdemeanor in Nevada.

The Department instituted disciplinary proceedings against appellant based on these two convictions and the underlying conduct.

At the administrative hearing, the Department presented testimony from the two victims. Appellant's former employee testified that she felt like she "had been raped" and that her "whole sense of security was compromised." She explained she was skeptical of appellant's rehabilitation efforts because, before appellant video recorded her, he was in counseling and "doing his church groups." The ALJ concluded that appellant's former employee "was profoundly and very negatively impacted by these events."

Appellant's former friend testified that when she learned of the secret photographing five years after it occurred, she felt "mortified" and "violated." She was devastated and became physically ill. Appellant's former friend was also skeptical of

3.

appellant's church-based rehabilitative efforts because appellant was attending church when he committed the crimes.

Appellant testified that he would not repeat this type of behavior again because he hurt so many people and is being vigilant in his recovery. He stated he has support through his church based group, Celebrate Recovery, and is being held accountable by his current employee, his wife, the Celebrate Recovery program, and Covenant Eyes software. Covenant Eyes monitors his internet usage and is readily accessible to those to whom he is accountable. When asked by his own counsel why he should be allowed to keep his license considering this pattern of behavior, appellant replied that he has an addiction to pornography and has been trying to replace his bad behaviors with good behaviors. Appellant attributed his act of video recording his employee to his pornography addiction. He explained he wanted an image of someone he knew. However, appellant stated that he secretly photographed his former friend because he "was mad at her that night."

Appellant voluntarily began individual counseling in March 2010 with Paul Mavrogeorge, a licensed marriage and family therapist. Appellant testified that Mavrogeorge is helping him deal with both pornography addiction and his criminal behavior. However, this was not the first time that appellant had been to therapy for pornography addiction.

Mavrogeorge did not testify at the hearing. Instead, appellant presented two letters from Mavrogeorge. In the letter dated December 1, 2011, Mavrogeorge stated that appellant came to counseling "in an attempt to resolve issues he was having with sexual impulsivity" and that appellant "has been very involved and willing to do all that was required to salvage his marriage and correct the emotional issues that led to his destructive behavior." Mavrogeorge further noted that at no time did appellant "justify or minimize his behaviors."

4.

The second letter from Mavrogeorge dated March 12, 2013, was submitted as an update after the hearing. Mavrogeorge stated that his opinions expressed in the December 2011 letter had not changed and were strengthened by the further passage of time. Mavrogeorge concluded:

> "The follow up work with Mr. Shew has allowed me to see an individual very open to recovery and repentance. Wellman has continued to stay very active in recovery and has become a leader and group facilitator in his recovery program. When an individual is in recovery from an addictive disorder, long term life style change is the key element that determines long term success. Mr. Shew continues to demonstrate the externalized behaviors associated with long term recovery and appears determined to continue the process of change he began three years ago."

At the hearing, appellant also offered the testimony of numerous character witnesses. Counselors from appellant's church, professional associates, appellant's current employee and members of appellant's family, including his wife, testified that appellant had demonstrated remorse, took full responsibility for his actions, sincerely desired to change and had changed. For example, the leader of appellant's recovery group stated he believes that appellant "is a changed man who will not return to his past behaviors."

The ALJ issued a proposed decision recommending that appellant's license be revoked. The ALJ characterized appellant's "time, work and commitment to his rehabilitation and recovery" as "impressive" noting that he has been consistent, serious and remorseful. The ALJ found the testimony of those close to appellant that his efforts have been genuine and that he is well on the road to rehabilitation to be persuasive. Nevertheless, the ALJ determined that appellant did not appreciate the seriousness of his offense and the victimization it encompassed. The ALJ noted that neither appellant nor Mavrogeorge addressed the very significant issue of appellant's "gross abuse of power and trust in relationships." Rather, the focus of appellant's rehabilitation efforts "focused largely, if not solely, on 'recovery from an addictive disorder.'" Further, the ALJ

5.

recognized that the severity of appellant's conduct and its effect on his victims should be weighed against the evidence of rehabilitation. The ALJ concluded that, until appellant "gains greater insight on these other elements underlying his criminal offense, his rehabilitative efforts remain incomplete. And until then, he is not a fit and proper person to hold an insurance license."

The Department adopted the ALJ's proposed decision and ordered appellant's license revoked.

Appellant petitioned for reconsideration of the Department's order adopting the proposed decision. Appellant included an additional letter from Mavrogeorge in which Mavrogeorge disagreed with the ALJ's statement that neither appellant nor Mavrogeorge addressed that appellant grossly abused a position of power and trust in relationships in the course of the therapy sessions. Mavrogeorge wrote "Although not the entire focus of our therapy sessions, Mr. Shew and I did consider the seriousness of Mr. Shew's offense because it clearly encompassed an abuse of professional and personal boundaries and significant victimization of personal relationships."[1]

The petition for reconsideration was deemed denied by operation of law.

Appellant then filed the underlying petition for writ of administrative mandamus. Before the hearing on the petition, appellant filed a written request for a statement of decision under Code of Civil Procedure section 632.

The trial court held the hearing on the petition in October 2013 and issued its decision affirming the Department's decision in January 2014. The trial court concluded that the order revoking appellant's license was supported by the ALJ's findings and the weight of the evidence. The trial court also denied appellant's request for a statement of decision finding that Code of Civil Procedure section 632 did not apply.

---

[1] This third letter is not part of either the administrative record or the trial court record. Accordingly, it is not part of the record on appeal and will not be considered.

## DISCUSSION

### 1.     *Standard of review.*

When an administrative decision substantially affects a fundamental vested right, such as the revocation of a professional license, the trial court must exercise its independent judgment on review.  (*Rand v. Board of Psychology* (2012) 206 Cal.App.4th 565, 574 (*Rand*).)  Thus, the trial court examines the administrative record for errors of law and conducts an independent review of the entire record to determine whether the weight of the evidence supports the administrative findings.  (*Ogundare v. Department of Industrial Relations* (2013) 214 Cal.App.4th 822, 827.)  Nevertheless, the trial court must accord a strong presumption of correctness to the administrative findings.  (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 816-817 (*Fukuda*).)  Further, while the trial court must exercise its independent judgment in determining whether the administrative findings are supported by the weight of the evidence, the propriety of the penalty to be imposed, considering rehabilitation and other relevant factors, is vested in the discretion of the administrative agency.  (*Windham v. Board of Medical Quality Assurance* (1980) 104 Cal.App.3d 461, 473.)  Additionally, it is the petitioner who bears the burden of establishing administrative error.  (*Fukuda, supra,* 20 Cal.4th at p. 817.)

Although the trial court is required to review an administrative decision under the independent judgment standard of review, the appellate court reviews the trial court's determination under the substantial evidence test.  (*Fukuda, supra,* 20 Cal.4th at p. 824.)  Thus, we must resolve all conflicts in the evidence, and indulge all reasonable inferences, in favor of the trial court's judgment.  (*Rand, supra,* 206 Cal.App.4th at p. 575.)  The question on appeal is whether the evidence reveals substantial support, contradicted or uncontradicted, for the trial court's conclusion that the weight of the evidence supports the administrative findings of fact.  The trial court's findings will be upheld unless they so lack evidentiary support that they are unreasonable.  (*Breslin v. City and County of San Francisco* (2007) 146 Cal.App.4th 1064, 1078.)

**2.** *The weight of the evidence supports the administrative findings of fact.*

The Department may revoke an insurance license on any of the grounds that would result in the denial of a license application. (Ins. Code, § 1738.) The revocation grounds include being convicted of "a misdemeanor denounced" by the Insurance Code "or other laws regulating insurance." (Ins. Code, § 1668, subd. (m)(2).) Crimes or acts that are substantially related to the qualifications, functions or duties of an insurance licensee include "[s]exually related conduct affecting a person who is an observer or non-consenting participant in the conduct" and "[m]ultiple convictions which demonstrate a pattern of repeated and willful disregard for the law." (Cal. Code Regs., tit. 10, § 2183.2, subd. (b)(4) & (8).)

In considering discipline of a licensee, the Department may determine the weight to be accorded to a "substantially related crime or act" by applying the guidelines set forth in California Code of Regulations, title 10, section 2183.3. These guidelines include, but are not limited to: "The extent to which the particular act or omission has adversely affected other person(s) or victim(s) … and the probability such adverse effects will continue"; "[t]he recency or remoteness in time of the act, misconduct or omission"; and "[t]he extenuating or aggravating circumstances surrounding the act, misconduct, or omission." (Cal. Code Regs., tit. 10, § 2183.3, subds. (a), (b) & (d).)

Regarding whether the licensee has sufficiently rehabilitated such that he or she is fit to hold an insurance license, the Department may consider all of the evidence presented. When considering the revocation of an insurance license on the grounds of conviction of a crime, the Department may consider criteria including, but not limited to: the nature and severity of the act or misconduct; the total criminal record; the time that has elapsed since commission of the act or misconduct; whether the licensee has complied with any terms of parole, probation, restitution or other sanctions; whether the licensee has made restitution or done anything to recompense the injured party to alleviate the wrong or damage caused by the act or misconduct; and whether the licensee

8.

has been significantly and/or conscientiously involved in community service.  (Cal. Code Regs., tit. 10, § 2183.4.)

### a.    *The license revocation was not additional punishment.*

Here the ALJ found, and the trial court agreed, that appellant's two misdemeanor convictions for sexually related conduct provided the Department with a valid basis for disciplining appellant.  Appellant does not dispute the existence of the misdemeanor convictions.  Rather, appellant contends that the revocation of his license is improper because it amounted to additional punishment for these convictions.

The function of an administrative proceeding concerning the suspension or revocation of a license is neither criminal nor quasi-criminal.  (*Ready v. Grady* (1966) 243 Cal.App.2d 113, 116.)  A license suspension or revocation is not imposed to further punish the individual but, instead, to protect the public from a dishonest, immoral, disreputable or incompetent practitioner.  (*Ettinger v. Board of Medical Quality Assurance* (1982) 135 Cal.App.3d 853, 856.)  "The purpose of insurance licensing is to protect the public by requiring and maintaining professional standards of conduct on the part of licensees acting as such within this state."  (*Goldberg v. Barger* (1974) 37 Cal.App.3d 987, 996.)

Appellant bases his claim that the suspension constituted additional punishment for his misdemeanor convictions on the trial court's findings that there was a valid basis for *discipline* and that the two victims testified regarding the "severe impact [appellant's] misconduct continues to have on their lives."  According to appellant, these findings demonstrate that the Department was improperly punishing him for past criminal conduct rather than seeking to protect the public.

However, the trial court's use of the term "discipline" does not indicate further punishment for the underlying misdemeanors.  Rather, "discipline of a license" is a term of art used interchangeably with a license suspension or revocation proceeding.  (Cal. Code Regs., tit. 10, § 2183.3.)  Further, when evaluating whether to revoke a license, the

Department may consider the extent to which the licensee's misconduct affected other persons or victims and the probability such adverse effects will continue. (Cal. Code Regs., tit. 10, § 2183.3, subd. (a).) Thus, the trial court properly considered the "severe impact" appellant's conduct had on the victims in its analysis.

### b. The finding that appellant poses a current risk to the public.

Appellant also contends there is no evidence to support a finding that he poses any current risk to the safety of the public. Appellant points to the testimony given by his associates, family and friends that they have no concerns that appellant will engage in similar conduct in the future and that appellant is a changed person.

Contrary to appellant's position, this testimony is far from conclusive on the issue of his risk to the public. First, none of these witnesses were qualified to give such an opinion. They were all lay witnesses, not experts in psychology or psychiatry. Moreover, appellant's therapist, Mavrogeorge, neither discussed appellant's criminal behavior nor offered an opinion as to whether appellant is likely to repeat this behavior.

Appellant attributed his criminal offenses to his alleged pornography addiction but did not present any evidence demonstrating the validity of his theory. As pointed out by the ALJ, appellant's actions "went beyond an irrational response to, or obsession with pornography."

Finally, the accountability measures employed by appellant, primarily monitoring his computer use, are directed at his pornography viewing, not his taking nonconsensual photographs of exposed women. Thus, appellant did not meet his burden of establishing administrative error. Accordingly, resolving all conflicts in the evidence and indulging all reasonable inferences in favor of the trial court's judgment, substantial evidence supports the administrative finding that appellant poses a current risk to the public.

### c. The finding that appellant's rehabilitation was insufficient.

As discussed above, when evaluating the rehabilitation of a licensee as part of a revocation proceeding, the Department may consider criteria that includes the nature and

10.

severity of the misconduct, the licensee's total criminal record, whether the licensee has complied with terms of probation or parole, whether the licensee has made restitution, and whether the licensee has been involved in community service. (Cal. Code Regs., tit. 10, § 2183.4.) However these criteria are not exclusive.

At the administrative hearing, the ALJ questioned appellant about the degree to which his conduct in viewing internet pornography differed from his criminal offense. Appellant responded that he did not think there was much difference between the two because both are "immoral." Appellant opined "that one can lead to the other, and that he had 'stepped over the line' into illegal behavior."

The ALJ found that appellant's explanation revealed a lack of insight into the more troubling elements of his behavior in that both criminal offenses involved a breach of trust in a longstanding professional or personal relationship. The ALJ concluded that the criminal offenses "involved an abuse of power and victimization of those in vulnerable positions. His conduct did not involve passive viewing of pornography." Rather, appellant's conduct was active, nonconsensual and covert. The insurance office camera scheme was relatively sophisticated, required a series of active steps to make each recording, and was repeated on multiple occasions in his insurance work setting. The ALJ noted that appellant's recovery program to date was important and laudable. Nevertheless, the ALJ found it surprising "that neither [appellant] nor Mr. Mavrogeorge addressed the most weighty issue in this case – [appellant's] gross abuse of power and trust."

The ALJ determined "[Appellant's] aggressive and harmful conduct evident in this case cannot simply or fairly be characterized as just another manifestation of his pornography addiction. Until such other matters are addressed, his rehabilitative efforts remain incomplete." The ALJ opined that appellant's testimony at the hearing showed appellant lacked appreciation for the seriousness of his offense and the victimization it clearly encompassed. Further, Mavrogeorge's letter only confirmed that appellant's

11.

individual counseling had focused "largely, if not solely, on 'recovery from an addictive disorder.'" Thus, the ALJ concluded that until appellant gained greater insight on these other elements underlying his criminal offense, he is not a fit and proper person to hold an insurance license.

Appellant argues the weight of the evidence does not support the ALJ's finding that his rehabilitation was insufficient. According to appellant, the underlying problem he needed to address was sexual impulsivity and an addiction to pornography. Appellant contends he worked on those issues through his extensive therapy. Appellant also notes that the Department's accusation did not allege or suggest he engaged in activity constituting an abuse of power and that neither criminal statute under which he was convicted includes abuse of power as an element of the offense.

However, the ALJ's conclusion that appellant's rehabilitation was incomplete was based primarily on appellant's own testimony regarding the nature of his offenses. It was apparent from appellant's attitude that he did not appreciate the seriousness of his offense. From this and the fact that appellant preyed on a long-term friend and an employee, the ALJ could reasonably find that appellant engaged in an abuse of power and breach of trust. The criteria considered in evaluating rehabilitation need not be either part of the Department's accusation or an element of the underlying criminal offense. (Cal. Code Regs., tit. 10, § 2183.4.)

Further, appellant's evidence of rehabilitation did not address the crimes of which he was convicted, i.e., the nonconsensual photographing or video recording of exposed women. Additionally, appellant did not offer any evidence to support his claim that his alleged pornography addiction caused him to commit the criminal offenses. In fact, appellant's own testimony contradicts this alleged connection between his pornography addiction and his crime. Appellant admitted that he photographed the exposed breasts of his then friend in Nevada because he was "mad at her that night." Thus, substantial

evidence supports the administrative finding that appellant's rehabilitation was incomplete.

### d. The revocation penalty.

Appellant argues that, because of his extensive rehabilitation efforts and the fact that the license forms the basis of his livelihood, at most a restriction such as probation should have been implemented. However, the propriety of a penalty is a matter vested in the discretion of the administrative agency and its decision may not be disturbed absent a manifest abuse of discretion. (*Cadilla v. Board of Medical Examiners* (1972) 26 Cal.App.3d 961, 966.) In reviewing the penalty imposed by an administrative body, neither a trial court nor an appellate court is free to either substitute its own discretion as to the matter or interfere with the imposition of a penalty because in the court's own evaluation of the circumstances the penalty appears to be too harsh. The reviewing court may interfere only when there is an arbitrary, capricious or patently abusive exercise of discretion. (*Ibid.*)

As discussed above, despite appellant's sincere rehabilitation efforts, the ALJ determined that appellant lacked appreciation for the seriousness of his offense and the victimization it clearly encompassed and therefore his rehabilitation was incomplete. This finding is supported by the weight of the evidence. In light of this finding, the license revocation was not arbitrary or capricious. Thus, the Department did not abuse its discretion in revoking appellant's license.

### 3. The trial court's failure to issue a statement of decision was not prejudicial.

Appellant requested a statement of decision. Appellant listed nine questions in his request. The trial court denied appellant's request on the ground that the trial was completed in one day.

The trial court erred in denying appellant's request. Under Code of Civil Procedure section 632, a statement of decision was required because appellant made the request before the matter was submitted. (*Jones v. Adams Financial Services* (1999) 71

13.

Cal.App.4th 831, 840.)  Nevertheless, this error was not prejudicial and therefore does not require reversal.[2]

In a statement of decision, the trial court is required to explain the factual and legal basis for its decision as to each of the principal controverted issues at trial.  (Code Civ. Proc., § 632.)  However, the court need not address each question listed in the appellant's request.  Rather, all that is required is an explanation of the factual and legal basis for the court's decision regarding such principal controverted issues at trial as are listed in the request.  (*Miramar Hotel Corp. v. Frank B. Hall & Co.* (1985) 163 Cal.App.3d 1126, 1130.)  Moreover, the title of the document is not determinative.  (*Id.* at p. 1129.)

In his petition for writ of mandate, appellant challenged four administrative findings.  Appellant argued that the weight of the evidence did not support the findings that: (1) neither Mavrogeorge nor appellant addressed appellant's gross abuse of power and trust; (2) the Department is justifiably concerned about whether appellant poses a risk to the safety of others; (3) appellant's rehabilitation is incomplete; and (4) it would be against public interest for petitioner to remain licensed.

The trial court's written decision addresses these challenged administrative findings and thus serves the purpose of a statement of decision.  Appellant disagrees.  According to appellant, the trial court did not explain the factual and legal basis for its conclusion that the weight of the evidence supported finding the Department is justifiably concerned about whether appellant poses a risk to the safety of others.

Although the trial court did not specifically refer to each disputed finding, the court stated it found the weight of the evidence supported the ALJ's findings.  Regarding

---

[2]  The issue of whether a trial court's error in failing to issue a statement of decision upon a timely request is reversible per se is pending before the California Supreme Court. (*F.P. v. Monier,* review granted Apr. 16, 2014, S216566.)  Nevertheless, as discussed below, the trial court's written decision satisfies the requirements of a statement of decision.

14.

this particular finding, i.e., the Department is justifiably concerned about whether appellant poses a risk to other's safety, the trial court noted that the evidence presented by appellant on rehabilitation did not address the crimes of which appellant was convicted, those crimes' relation to appellant's alleged pornography addiction, or the likelihood of recurrence of the nonconsensual photographing or video recording of exposed women. The trial court also found that appellant did not fully appreciate the difference between his alleged pornography addiction and his criminal behavior. The trial court's references to this lack of evidence of rehabilitation, especially the likelihood of recurrence, and to appellant's lack of insight into the seriousness of his offense explain the basis for the trial court's conclusion that the finding is supported by the weight of the evidence.

Appellant also objects to the trial court's failure to address his question "[w]hether the weight of the evidence supports a finding that [appellant] poses an *actual and significant* current risk to the safety of consumers, insurance clients, employees, or other business associates." (Italics added.) Although similar to the finding discussed above, there was no disputed administrative finding on this exact issue. Accordingly, it was not relevant to the trial court's review of the administrative decision.

Appellant further argues that, by not issuing a statement of decision, the trial court took away his ability to go through the statutory process for objecting to the statement of decision. According to appellant, he could have pointed out that, contrary to the finding, there was specific and unrefuted testimony that appellant addressed the "abuse of power issues." Appellant further contends he would also have pointed out the deficiencies related to the "risk to the public" findings.

"'By filing specific objections to the court's statement of decision a party pinpoints alleged deficiencies in the statement and allows the court to focus on the facts or issues the party contends were not resolved or whose resolution is ambiguous.'" (*Ermoian v. Desert Hosp.* (2007) 152 Cal.App.4th 475, 498.) Such objections to ambiguities and omissions in the statement of decision's factual findings prevent implied

factual findings being made on appeal. (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 59.) A statement of decision that adequately explains the factual and legal basis for the trial court's decision on the controverted issues puts the case in a more appropriate posture for appellate review and materially aids the appellate court's consideration of the issues on appeal. (*Social Service Union v. County of Monterey* (1989) 208 Cal.App.3d 676, 681.)

However, the "deficiencies" that appellant alleges exist in the trial court's decision are not based on omissions or ambiguities. Appellant simply disagrees with the trial court's conclusions. We have an adequate record on appeal and have not made any implied findings in the Department's favor.

Appellant has not been prejudiced by the trial court's failure to issue a statement of decision. Therefore, the trial court's error does not require reversal of the judgment.

## DISPOSITION

The judgment is affirmed.

_____
LEVY, Acting P.J.

WE CONCUR:


_____
DETJEN, J.


_____
FRANSON, J.

16.